## LAWRENCE LAWTON v. STATE OF FLORIDA

13 So. (2nd) 211         January Term, 1943
April 2, 1943         En Banc
Rehearing Denied May 18, 1943

*G. B. Fishback, W. R. Smith & Fishback & Smith,* for appellant.

*J. Tom Watson,* Attorney General, *Woodrow M. Melvin,* Assistant Attorney General, and *Clark W. Jennings,* Special Prosecuting Attorney, for appellee.

CHAPMAN, J.:

The appellant, Lawrence Lawton, was tried in the Criminal Court of Record of Orange County, Florida, on four counts of an information charging embezzlement. He was convicted by a jury on the third count and by the trial court sentenced to serve a period of two years in the state prison, and has perfected an appeal therefrom to this Court.

The factual background of the controversy is viz.: Anton Doyscher, in his early eighties, and his wife, Rosa Doyscher, in her late sixties, each of foreign birth, owned an orange grove in the vicinity of Orlando. The two owned the grove, but the legal title thereto rested in the wife, Rosa Doyscher. Lawrence Lawton was at the time a realtor and operated an investment business at Orlando under the name of Lawton Investment Company, a Florida corporation. The appellant Lawton sold the grove for the Doyschers, charging the usual commission.

Considerable money was by the Doyschers placed with Lawton, or his company, for investment purposes. Interest on these investments for a while was paid by Lawton to the Doyschers. Some of the money was expended in the perfection and acquisition of a patent for a labor saving machine usable for the wrapping of oranges for shipment, while some of it was employed in the cost of drilling for oil in the State of Louisiana. Lawton testified that Anton Doyscher, shortly prior to his death, authorized these investments by Lawton and stated that the payment by Lawton to Rosa Doyscher annually of the interest on the entire amount left with him for investment would be satisfactory.

The money was squandered and Rosa Doyscher, then a widow, failed to receive interest on the investment in accord-

ance with the agreement with Lawton. She retained counsel and fixed his compensation for services rendered at the sum of 25% of the amount recovered from Lawton, or the Lawton Investment Company. Suit by counsel was instituted in the Circuit Court of Orange County and a default judgment obtained on July 13, 1942, against Lawton and the Lawton Investment Company, in favor of Rosa Doyscher, the widow, for the total sum of $23,740.37. The writ of execution issued on the judgment appears not to have been satisfied.

On March 18, 1942, Lawton was informed against for embezzlement by the County Solicitor of Orange County, Florida. The final judgment entered in the Circuit Court of Orange County against Lawton and his company involved the items alleged to have been embezzled. There is evidence in the record to the effect that the criminal suit was not to be tried pursuant to an agreement between Lawton and private counsel of Rosa Doyscher, provided Lawton would pay to counsel (for Rosa Doyscher) within three days the sum of $1,000.00, provided a confession by appellant was filed in the record of the criminal case, but this contention is contradicted by some of the testimony.

On March 14, 1942, Lawton signed a written confession prepared by private counsel of Rosa Doyscher and left with her counsel. Appellant testified that he went to counsel's office, pursuant to a telephone call and signed the confession so prepared, with the understanding that he would be allowed five years in which to pay the debt. He was to pay $1,000.00 within three days; and the sum of $250.00 monthly thereafter; that it was his agreement with counsel that if he signed the confession there would be no criminal prosecution; that his wife and two sons would not be embarrassed or disgraced by a trial; the transaction would be closed by filing the confession; that the County Solicitor would not agree to continue the case without the confession. These statements were corroborated, in part, and contradicted, in part, by testimony. The appellant was arrested, contrary to the agreement with private counsel, and the case set for trial on a certain date by the Court all of which occurred to the surprise of appellant and contrary to his agreement.

The record discloses that private counsel was sworn as Assistant Prosecutor in the lower court, and as counsel participated in the trial, and during the progress of the trial, took the stand as a witness, gave testimony and was examined by the County Solicitor and cross examined by counsel, for appellant. The brief filed by the State in this Court bears the signature of the Assistant Prosecutor, supra, and was by him orally argued at the bar of this Court.

The State, during the progress of the trial, offered in evidence, over the objection of counsel, a copy of the final judgment in the Circuit Court of Orange County in the case of Rosa Doyscher v. Lawrence Lawton and Lawton Investment Company, a corporation, involving the items or indebtedness as enumerated in the counts of the information charging embezzlement. This was error. The difference in degree of the burden of proof in civil and criminal cases renders the final judgment in the civil case inadmissible because the degree of proof in the civil case was by a preponderance of the evidence, while the degree of proof required in the criminal case was beyond a reasonable doubt. See Halvering v. Mitchell, 301 U.S. 391, 82 L. Ed. 917, 58 Sup. Ct. 630; State v. DuBose, 152 Fla. 304, 11 So. 477, opinion filed January 22, 1943, and unreported; Sims v. State, 54 Fla. 100, 44 So. 737.

It is contended that the judgment should be reversed because of the alleged unprofessional conduct of private counsel appearing in the dual capacity of assistant counsel for the prosecution and as a witness for the State of Florida and against the appellant. Section 19 of the Canons of Professional Ethics is cited to sustain this view, which is viz.: (text 125 Fla. 509):

" '19. Appearance of Lawyer as Witness for His Client.— When a lawyer is a witness for his client, except as to merely formal matters, such as the attestation or custody of an instrument and the like, he should leave the trial of the case to other counsel. Except when essential to the ends of justice, a lawyer should avoid testifying in court in behalf of his client."

See In re: Canons of Professional Ethics, 125 Fla. 501.

We are unable to agree to this contention, but it is shown that the items involved in the civil suit are identical with the several items alleged to have been embezzled and counsel is shown to be financially interested to the extent of 25% of the amount recovered; having conferred frequently with the appellant, as disclosed by the record; having drafted and obtained the alleged confession on the part of the appellant, it may be advisable, when the case is again submitted, that the provisions of Section 19, *supra,* be observed by counsel by either not participating as assistant prosecuting attorney or as a State witness. Reversible error has not been made to appear in this connection.

It is next contended that the confession adduced in evidence over objection of counsel was unlawfully obtained. The record discloses that the trial court, in the absence of the jury, heard testimony on the question of whether or not the alleged confession was voluntarily made, and thereafter admitted the same into evidence. Counsel for the State pose for adjudication the question: Is a confession made to a civilian when the confessor is not under arrest or in custody, an extrajudicial confession which cannot be received in evidence, unless it is first shown to have been made without any threat or hope or promise of reward? It is true that the appellant, as shown by the record, was not under arrest or in custody when the alleged confession was made at the time to a civilian, but is shown that the civilian later took the oath of Assistant County Solicitor of Orange County and thereby became an agent of the State. He now seeks to use the confession obtained when a civilian against the appellant at a subsequent date when he becomes his prosecutor. The assistant prosecutor and the appellant discussed the proposed criminal proceedings, i.e., whether it would originate before a magistrate, County Judge, or with the County Solicitor. It is a reasonable inference that these conversations occurred prior to the date of filing the information, viz.: March 18, 1942; and the confession dated March 14, 1942. It is not disputed that the appellant had a wife and two sons; he wanted to avoid a criminal prosecution; he did not want to embarrass his family; he wanted time to pay the indebtedness; the appellant believed his agree-

ment with private counsel would obtain the objectives; he signed the confession for these purposes and not for a criminal prosecution. The private prosecutor and appellant were shocked by the action of the officials in calling and placing the case on trial; thereby upsetting their agreements. To render a confession voluntary and admissible as evidence, the mind of the accused should at the time be free to act, uninfluenced by fear or hope. If the attending circumstances be calculated to delude the accused as to his true position and exert an improper and undue influence over his mind, the confession is not admissible. See Simon, a Slave v. State, 5 Fla. 285; Dixon v. State, 13 Fla. 336; Coffee v. State, 25 Fla. 501, 6 So. 493; Williams v. State, 143 Fla. 826, 197 So. 526; Clay v. State, 143 Fla. 204, 196 So. 462; Smith v. State, 135 Fla. 835, 186 So. 203; Cawthon v. State, 118 Fla. 394, 159 So. 366; Dabney v. State, 119 Fla. 341, 161 So. 380; Harrison v. State, 110 Fla. 420, 148 So. 882; Nickels v. State, 90 Fla. 659, 106 So. 479; Green v. State, 40 Fla. 191, 23 So. 851; McNish v. State, 47 Fla. 69, 36 So. 176; Sims v. State, 59 Fla. 38, 52 So. 198; Williams v. State, 48 Fla. 65, 37 So. 521; Moore v. State, 68 Fla. 91, 66 So. 431; McDonald v. State, 70 Fla. 250, 70 So. 24; Davis v. State, 90 Fla. 217, 105 So. 843.

The case of Brown v. Mississippi, 297 U.S. 278, 56 S. Ct. 461, 80 L. Ed. 682, involved a confession shown by witnesses adduced by the prosecution to have been voluntarily given. The court concluded that this was not a sufficient showing. The testimony to justify the admission of a confession must establish beyond all reasonable doubt that it was freely and voluntarily made. The rack and torture chambers cannot be substituted for the witness stand. In Chambers v. Florida, 309 U.S. 227, 241, 60 S. Ct. 472, 479, 84 L. Ed. 716, it was said:

". . . The testimony of centuries, in governments of varying kinds over populations of different races and beliefs, stood as proof that physical and mental torture and coercion had brought about the tragically unjust sacrifices of some who were the noblest and most useful of their generations. The rack, the thumbscrew, the wheel, solitary confinement, protracted questioning and cross questioning, and other ingenious forms of entrapment of the helpless or unpopular

had left their wake of mutilated bodies and shattered minds along the way to the cross, the guillotine, the stake and the hangman's noose. And they who have suffered most from secret and dictatorial proceedings have almost always been the poor, the ignorant, the numerically weak, the friendless, and the powerless."

See: Ziang Sun Wan v. United States, 266 U.S. 1, 14, 45 S. Ct. 1, 3, 69 L. Ed. 131; Canty v. Alabama, 309 U.S. 629, 60 S. Ct. 612, 84 L. Ed. 988; Lomax v. Texas, 313 U.S. 544, 61 S. Ct. 956, 85 L. Ed. 1511; Vernon v. Alabama, 313 U.S. 547, 61 S. Ct. 1092, 85 L. Ed. 1513.

The State failed to establish the voluntariness of the alleged confession beyond all reasonable doubt. There is undisputed testimony that the appellant when signing the alleged confession sought to escape a criminal prosecution; he wanted to prevent disgrace and embarrassment to his family; he thought or believed the case would be pigeon-holed in the County Solicitor's office if the confession was signed and placed with it; that he was to pay $1,000.00 within three days after making it and $250.00 monthly thereafter. These stubborn facts and attending circumstances may be overcome by the prosecution in a retrial of the case.

The judgment is reversed and a new trial awarded.

BUFORD, C. J., BROWN, THOMAS, ADAMS and SEBRING, JJ., concur.

TERRELL, JJ., dissents.

TERRELL, J., dissenting:

I agree with the majority opinion of Mr. Justice CHAPMAN in so far as it holds that the trial of apellant was infected with error. I do not agree that the errors were harmful. I think all the objectionable evidence may be eliminated and there will remain ample evidence to show a consistent course of deception and fraud on the part of appellant to the prosecuting witness by which he procured and misappropriated aproximately twenty thousand dollars belonging to her and her deceased husband.

The evidence of appellant shows this, the evidence of the prosecutrix shows it, and their evidence is strongly corrobo-

rated. True, there is an attempt to explain away some of the evidence but it is not contradicted and after all is said, the fact of guilt is as evident as vinegar in the disposition. I am thoroughly committed to the constitutional guaranty of fair trial but I am convinced that the errors complained of were harmless, even that charging the trial court with dyspepsia. I do not think that the harmless error statute will cure his malady but it will cure fanciful aberrations from approved canons of procedure activated by it. It would be trifling with the processes of justice and a useless expense to send the case back to procure the "me too" of another jury.

I therefore dissent.